KENNEDY and others *against* SCOVIL and another:

### IN ERROR.

A former judgment or decree is not evidence, in a subsequent suit between the same parties, of any matter which came in question collaterally, though within the jurisdiction of the court; nor of any matter to be inferred by argument from such judgment or decree.

In order to render a former judgment or decree conclusive on any matter, it must appear that the precise point was in issue; and this must appear from the record itself.

Although it is not necessary that the fact to be proved by the record, should have been solely and specifically put in issue, on the trial of the former suit; yet the fact must be one which is essential to uphold the judgment or decree.

K and S being tenants in common of a stream and pond of water, connected with which were, first, a mill, owned by S alone, and then, lower down, another mill owned by K and S, K owning two thirds and S one third, K, in *December*, 1836, filed a bill in chancery, against S, stating, that the owners of the lower mill were entitled to the uninterrupted use of so much of the water as was needed at that mill before any of it should be used at the upper mill; that for six months next preceding the filing of the bill, S had, by the means therein set forth, diverted all the water from the lower mill, thus depriving the owners altogether of the use of the water at that mill; and that S threatened that he would continue so to do, and was taking measures for that purpose; praying that S should be enjoined against such acts, and to cease from diverting any part of the water from the lower mill. Such facts were found with regard to the rights of the parties to the use of the water, that the court decided, that each of the mills was entitled to a moiety of the water, and that the owners of the lower mill had a right to take their part, by means of a conductor from the flume. With respect to the conduct of S, it was found substantially, that after the rights of the parties were acquired in the respective premises, S lowered an orifice in the flume, and thereby almost entirely diverted the water from the lower mill, and that he had denied, and did then deny, the right of the owners of that mill to take any water for its use, by means of a conductor placed in the flume; that by reason of these acts of S, the owners of the lower mill were unable to operate their works

*Middlesex,*
July, 1840.

Kennedy
*v.*
Scovil.

more than about three hours in a day, and, during a great part of the time, none at all. The court thereupon passed a decree enjoining *S* against preventing the owners of the lower mill from using one half the water in the pond, by means of the flume and conductor. On the hearing of a bill in chancery, brought in *August*, 1838, by *K* against *S*, for an account of water used by *S*, at the upper mill, beyond his proportion, *K* offered in evidence an exemplification of the record in the former suit, to prove, that for the period of six months next prior to the institution of that suit, *S* had used, at the upper mill, more than one half of the water, and had thereby prevented the owners of the lower mill from using as much as one half. It was held, that such record was not admissible, and if admissible, would not be conclusive evidence, for the purpose for which it was offered.

THIS was a bill in chancery, brought in *August*, 1838, for an account of water used by the defendants, beyond the proportion to which they were entitled.

The situation of the water in question and of the manufactories of the parties to which it was applied, appears from the report of the former case of *Kennedy* & al. v. *Scovil* & al. 12 *Conn. Rep.* 318.

At the term of the superior court held at *Middletown*, in *February*, 1839, the parties appeared, and admitted, that the plaintiffs and the defendants were owners and possessors, as tenants in common, in the proportions specified in the bill, of the lands and the mills or manufactories thereon, described in the bill; that they were also tenants and possessors in common, in equal and undivided moieties, of the water and water privileges appurtenant to said lands; and that the use of this water belonged to them respectively in equal and undivided moieties. The court thereupon appointed a committee to take the account; and on the hearing before that committee, the plaintiffs offered in evidence an exemplification of the record of a judgment in a former suit in chancery, brought by the present plaintiffs against the present defendants, [the case above referred to,] to restrain the latter from an improper and excessive use of the water, claiming that such record was admissible evidence to shew, and that it did shew conclusively, that for the period of six months next prior to the institution of that suit, the defendants had used, in their manufactory, more than one half of the water in the pond, and, during that period, had prevented the plaintiffs from drawing or using as much as one half.

The purposes of this case may require a more literal statement of some of the averments of the former bill and of the

*Middlesex,*
July, 1840.

Kennedy
*v.*
Scovil.

facts found, than is contained in the report of the case referred to. After describing the land, pond, dam, flume, conductor and mills, the bill stated, That such were the rights and privileges of the plaintiffs to the water in said pond and flume, that they were entitled, at all times, to have the water from said pond, and through said flume and said conductor, flow uninterruptedly to said mill of the plaintiffs and said *Scovil,* so that they might, at all times, use so much of the water in said pond as was needed by them for propelling machinery in their said mill, before any of it should be diverted or used, by the defendants, in their mill; that the defendants, with full knowledge of all the facts in the case, and without the consent and in opposition to the request of the plaintiffs, had made, and for more than six months past had kept open, and did then keep open two large apertures from out of said flume, on the *Northerly* side thereof, on the premises of the defendants, and nearer the bottom of said flume than the mouth of said conductor, of such size and character as at all times, when the water did not rise above said apertures, to divert the whole of the water from said pond out of said flume and away from said conductor and the mill of the plaintiffs; that by means thereof, the defendants then, and for more than six months past, had, diverted all the water out of said flume as aforesaid, and had prevented, and did then prevent the plaintiffs from receiving and using the same, at their said mill, as they otherwise would do; and that the plaintiffs had, during said time, by reason of said acts of the defendants, been prevented working and using their said mill and the machinery therein, and had thereby been prevented receiving the profits of the same, as they otherwise would have done, and had sustained great damages in the premises; and that the defendants declared and threated, that they would continue to do as they had done and were doing as aforesaid; and that the defendants, as the plaintiffs were informed and believed, intended so to do, and were taking measures for that purpose. The plaintiffs, therefore, sought an injunction against said acts of the defendants, restraining them from using or keeping open their said apertures in said flume, and from diverting any part of said water from the plaintiffs' mill.

The following is an extract from the finding of the court: " That when the upper mill and flume were first made, and

*Middlesex,*
*July, 1840.*

Kennedy
*v.*
Scovil.

before the 8th of *June*, 1832, there were made in and leading from said flume two large orifices for water to pass from said flume into the mill of the defendants, one of them for a wheel which moved a trip-hammer, and which orifice was lower than the mouth of the conductor of the plaintiffs' mill, and one of them for a bellows wheel, and which was higher up in said flume than the mouth of said conductor ; but that notwithstanding said two orifices, the water from said flume and pond, needed for the plaintiffs' lower mill, would pass through said flume into said conductor, and thence to the said mill of the plaintiffs, and keep the same in operation at all times when there was sufficient water for both mills ; that on or about the 1st of *November*, 1835, the defendants, without the consent of the plaintiffs, lowered in said flume the last-mentioned orifice about five feet, making it three feet lower than the mouth of said conductor, so that at all times afterwards, when there was not sufficient water in said pond and flume for both of said mills, the whole of it was drawn off, by the defendants, at their said upper mill ; that for some months before and on the 8th of *December*, 1836, there was, and had been, in said stream and pond, water enough to keep the said mill of the plaintiffs in operation during the usual working hours of each day ; that during the whole of said time, the plaintiffs needed all said water for the use and operation of their said lower mill, which was well known to the defendants ; and that at divers times, especially on the 10th of *August*, and 8th of *December*, 1836, the plaintiffs particularly informed the defendants, that they needed said water as aforesaid, and requested the defendants to shut the gates to their said orifices, and permit the water to flow on, through said flume and said conductor, to said lower mill, but the defendants refused so to do, and have at all times since, up to the commencement of this suit, refused to shut said gates, and thereby to permit said water to flow on to said lower mill ; and they continue at all times to use almost the whole of said water, so that the plaintiffs, during said six months, have not been able to operate their said mill more than a very small part of each day, and upon an average not more than three hours and seventeen minutes a day, and for many days at a time, not at all, though during said times there has been water enough in said stream, pond and flume for the plaintiffs to continue their said mill in

operation the greater part of the time, which would have flowed to said mill, if the defendants had not used it as aforesaid, and which, had it flowed to the plaintiffs' said mill, would have been used by them therein."

The court subsequently granted the prayer of the bill, and passed a decree restraining the defendants, under a penalty of 2000 dollars, from obstructing or preventing in any measure the plaintiffs from drawing one half of the water of said pond from the flume and conductor mentioned in their bill, or a conductor thereafter to be made similar thereto, for the necessary accommodation of said mill below.

To such record, containing the entire proceedings in the suit, the defendants objected, claiming that it was not admissible at all, or if admissible, that it was not conclusive evidence. After much other evidence had been adduced by the parties, the committee found and reported as follows: "If the said record is, by the court, considered admissible and conclusive evidence, for the purpose for which it was offered in evidence, the committee find, that during the time claimed and alleged, by the plaintiffs, in their bill in this suit, that the defendants used for their mill more than half of the water in said pond, the defendants have used and appropriated to their use more than half of the water in said pond, and, during that time, have deprived the plaintiffs of the use of a portion of their half of the water in said pond, to which the plaintiffs were, during said time, entitled; and that the plaintiffs have suffered damage thereby to the amount of one dollar: But if said record is considered, by the court, inadmissible in evidence, or not conclusive for the purpose for which it was offered, the committee find, that during the time claimed and alleged, by the plaintiffs, in their bill in this suit that the defendants used more than half the water in said pond, the defendants have not used nor appropriated to their use more than one half of the water of said pond; and that, therefore, the plaintiffs have not, during said time, been deprived, by the defendants, of the use of any of the water of said pond, to which they, the plaintiffs, were entitled."

The court accepted the report, and found, that the allegations of the plaintiffs' bill, so far as they were found by the committee, or agreed to by the parties, were true ; but considering the record offered in evidence as not admissible or

*Middlesex,*
July, 1840.
———————
Kennedy
*v.*
Scovil.

conclusive for the purpose for which it was offered, the court dismissed the bill, and decreed the defendants their costs.

To revise this decision, the plaintiffs, by motion in error, brought the case before this court.

*Baldwin* and *Clark,* for the plaintiffs, contended, That the record offered in evidence before the committee, was admissible and conclusive for the purpose for which it was offered.

In the first place, the parties to that suit were the same as the parties to this—the same plaintiffs against the same defendants.

Secondly, the facts found in that suit are the precise facts which the record was offered to prove, *viz.* that for the period of six months next prior to the commencement of that suit, the defendants had used at their mill more than half the water, and had thereby deprived the plaintiffs of as much as half. These facts, though expressed in different terms, were alleged in the bill and found by the court.

Thirdly, these facts were made the basis of the decree in that case. 12 *Conn. Rep.* 327.

Fourthly, they were directly in issue between the parties, and were necessary to uphold the decree. The case is, therefore, within the decisions requiring this ingredient. *Coit* v. *Tracy* & al. 8 *Conn. Rep.* 268. *Hotchkiss* v. *Nichols,* 3 *Day* 138. *Betts* v. *Starr,* 5 *Conn. Rep.* 550. *Hopkins* v. *Lee,* 6 *Wheat.* 109. *Denison* v. *Hyde* & al. 6 *Conn. Rep.* 508. 1 *Stark. Ev.* 191. 198. *Swift's Ev.* 10. 1 *Phill. Ev.* 254.

Fifthly, these facts, having been so put in issue, found, and made the basis of the decree, and being moreover necessary to uphold that decree, are *conclusive* upon the parties, and cannot again be made the subject of litigation between them. *Coit* v. *Tracy* & al. 8 *Conn. Rep.* 268. and most of the other authorities above cited.

Sixthly, it is no objection that other evidence was introduced ; for the extent of the injury which the plaintiffs sustained, must necessarily depend upon other evidence.

*Hungerford* and *Barnes,* for the defendants, after remarking, that this was not an ordinary bill for an account, but was in the nature of an action on the case to recover damages of

the defendants for having violated the plaintiffs' rights in the use of the water, the plaintiffs having come into chancery merely on account of the technical difficulty of proceeding at law, as *Scovil*, one of the defendants, was part owner with the plaintiffs of the lower mill, contended, 1. The record in the former suit for an injunction was inadmissible in the present suit.

First, the plaintiffs, in their bill for an injunction, claimed a *prior* right to *all* the water in the pond and flume ; and the matter directly in question was, whether their right was more or less extensive than their claim, and whether the defendants had made an inequitable use of their power to restrain or impede the passage of water to the plaintiffs' mill. As the respective rights of the parties were not mutually conceded and settled, the inquiry, on the hearing, did not, and could not, turn upon the point whether, during a given period, the defendants had, upon the whole, taken more than *one half* the water, and if so, to what precise amount. But in the present suit, the title of the defendants to one half of the water, is admitted ; and the actual quantity of water taken by the defendants beyond that taken by the plaintiffs, during a period of six months, is the very point, and the only point, in dispute.

Secondly, in the bill for an injunction, no claim was made for damages ; and consequently, at the hearing, no testimony was, or could be, adduced on that subject. In the present suit, the recovery of damages is the exclusive object. The matter, therefore, to be litigated and determined in this suit, did not come directly in question in the suit for an injunction ; and of course, the evidence was inadmissible. 1 *Stark. Ev.* 190. & seq. 201.

2. That if the evidence was admissible, it was not *conclusive.*

First, because the facts to be proved in this suit were not directly in issue in the former suit, were not directly decided by it, and were not necessary to uphold it. *Coit* v. *Tracy &* al. 8 *Conn. Rep.* 268. *Fairman* v. *Bacon, Id.* 418.

Secondly, because at most, the identity of the matters litigated in the two suits can be inferred only by argument or construction. 1 *Stark. Ev.* 190. *Hopkins* v. *Lee,* 6 *Wheat.* 109. *Lawrence* v. *Hunt,* 10 *Wend.* 80. *Manny* v. *Harris,* 2 *Johns. Rep.* 24.

*Middlesex,*
*July, 1840.*

Kennedy
*v.*
Scovil.

Thirdly, because the facts found by the court in the suit for an injunction, although perhaps sufficient to sustain the decree in that case, are yet, for the purposes of an account, in all respects too indefinite, uncertain and inconclusive to justify the rendering of any judgment or passing of any decree upon them for damages.

Fourthly, because the plaintiffs, by omitting to claim damages in the former suit, and then calling upon the court to take an account of the defendants, have elected to submit the matter to a new trial and decision upon the *weight* of evidence. 1 *Stark. Ev.* 206.

Fifthly, because the record in the former suit does not prove, that the defendants took more than one half the water, during the six months specified in this suit.

STORRS, J.    The only question before us, is, whether the record exhibited on the hearing before the committee, was admissible and conclusive evidence of the matters which it was offered to prove.

With regard to the effect of judgments in former suits, the general rule, as laid down in the treatises on evidence, and supported by the cases, is, that no matter, once litigated and determined, by proper authority, shall, a second time, be brought into controversy between the same parties ; and therefore, the judgment of a court of concurrent jurisdiction, directly upon the point, is, when pleaded in bar, in cases where a special plea is required, and in other cases, when given in evidence, conclusive between the parties upon the same matter directly in question in another court ; and that the judgment of a court of exclusive jurisdiction is, in like manner, conclusive upon the same matter coming incidentally in question in another court, between the same parties, for a different purpose.    But neither the judgment of a court of concurrent or exclusive jurisdiction is evidence of any matter which comes collaterally in question, though within their jurisdiction ; nor of any matter to be inferred by argument from their judgment.    *Duchess of Kingston's* case, 11 *State Tri.* 261.    *Swift's Ev.* 10. 12.    *Peake's Ev.* 34.    *Phill. Ev.* 234. In order to constitute a former judgment an estoppel, or, in other words, to render it conclusive, on any matter, it is necessary that it should appear that the precise point was in

issue and decided ; and that this should appear from the re-
cord itself. *Smith* v. *Sherwood,* 4 *Conn. Rep.* 276. *Sintze-*
*nick* v. *Lucas,* 1 *Esp. Rep.* 43. *Church* v. *Leavenworth,* 4 *Day,* 274. *Fairman* v. *Bacon,* 8 *Conn. Rep.* 418. And although it is not necessary that the fact to be proved by the record should have been solely and specifically put in issue on the former trial; yet the fact must be one which is essential in order to uphold the judgment or decree. *Stark. Ev.* *pt.* 2. *p.* 200. *Coit* v. *Tracy,* 8 *Conn. Rep.* 268. *Fairman* v. *Bacon,* 8 *Conn. Rep.* 419. 425.

Tested by these principles, the record in question, if admissible at all, cannot be deemed conclusive for the purpose for which it was offered in evidence.

The first bill alleged, that the owners of the lower mill, [the plaintiffs and *Scovil,*] had a right to a priority over the owners of the upper mill, [the defendants,] in the use of the water of said pond, so that none of it should be used by the latter, when it was wanted for the former ; and that for six months next preceding said bill, the defendants had, by the means therein set forth, diverted the whole of said water from the lower mill ; thus depriving the plaintiffs altogether of the use of the water and of their said mill ; and that the defendants threatened that they would continue, and were taking measures, so to do ; and prayed that the defendants should be enjoined against said acts, and to cease from diverting any part of said water from said lower mill.

Such facts were found, with regard to the rights of the parties to the use of the water, that the court decided, that each of the mills was entitled to a moiety of the water of said pond, and that the plaintiffs had a right to take their part, by means of a conductor from the flume. 12 *Conn. Rep.* 327.

With respect to the conduct of the defendants, it was found, substantially, that after the rights of the several parties were acquired in the respective premises, the defendants lowered an orifice in the flume, and thereby almost entirely diverted the water from the plaintiffs' works, and that they had denied, and did then deny, the right of the plaintiffs to take any water for the use of the lower mill, by means of a conductor placed in the flume ; that, by means of these acts of the defendants, the plaintiffs were unable to operate their works

more than about three hours in a day, and during a great part of the time, none at all. A decree was passed, enjoining the defendants against preventing the plaintiffs from drawing one half of the water in the pond, by means of said flume and conductor, and obstructing the plaintiffs in the enjoyment of one half of said water.

I have not recited the language of the finding, because it is deemed unnecessary, and would be comparatively unintelligible. It does not ascertain, with precision, the proportion of the water which had been used, either by the plaintiffs or defendants, or the particular periods or length of time during which the plaintiffs were deprived of it, nor the extent of that deprivation. It does not profess to do so ; nor was it necessary for the purposes of that proceeding, as it would have been, if the object of it had been to take an account of the water used by the respective parties, or to lay the foundation for a recovery in damages ; neither of which was sought in the bill: and especially, it is not found, that, for and during the period of six months prior to the bringing of the bill in that case, the defendants had used more than half of the water in said pond. That fact is not found directly, or by necessary construction ; and it is doubtful whether it results even from argument or probable inference. Nor would that fact be essential to uphold the decree in that case. The bill for an injunction, as in all such applications, was addressed to the discretion of the court, although that discretion must be governed by settled and known rules. (12 *Conn. Rep.* 327.) The injunction was granted on the ground that the acts of the defendants, in depriving the plaintiffs of their proportion of the water, of which they were entitled to a joint use, was inequitable and unconscientious ; and accompanied by evidence of an intention to continue such acts, ought to be restrained. It was not necessary, in order to warrant the interposition of the court by injunction, that the fact, of which the record is claimed to be evidence, should be precisely proved and found. It would have been justified, by evidence going to a less extent. If, therefore, the record offered be admissible as evidence, it is not to be deemed conclusive, on any principle hitherto adopted in regard to the effect of judgments or decrees.

It may indeed be well doubted, whether the decree on a

bill of injunction merely, is ever to be considered as conclusive, excepting perhaps so far as it may settle the rights in dispute between the parties. Those rights being decided, the propriety of granting this peculiar and specific remedy for an actual or threatened violation of those rights, rests in the sound discretion of the court, to be exercised in the particular circumstances of the case, and often for a particular and temporary purpose only; and a decree or order thus made would hardly seem to fall, unless to the limited extent suggested, within the reason or policy which gives to ordinary judgments a conclusive effect. *Camp.* v. *Bates*, 11 *Conn. Rep.* 51.

It is unnecessary to determine whether this is to be considered as a bill seeking for an account of the use of property to which the parties are jointly entitled, or as a bill in chancery substituted for an action on the case to recover damages sustained by the plaintiffs and *Scovil*, the joint owners of the lower mill, in consequence of a violation of their rights, by *Scovil* and *Allison*, the joint owners of that above, rendered necessary by the technical rule which precludes the same persons from being both plaintiffs and defendants in an action at law. These two descriptions of bills are, as has been argued at the bar, entirely different in their nature; the evidence to sustain them would be unlike; and the recovery in them would proceed on different principles. But the proper mode of correcting any error in the proceedings of the committee, growing out of a misapprehension of the true character of the bill, would be by a remonstrance to their report, where such errors might be rectified, and not by a writ of error to reverse the judgment of the court below, on a question of law presented by the report, and not decided by the committee.

We think that the judgment complained of ought to be affirmed.

In this opinion the other Judges concurred.

Judgment affirmed.